May it please the court. My name is Adam Schwartz and I represent the appellate Mrs. Zaydah Barksdale. Along with me at council table is Chris King. In herring the Supreme Court held that closing argument is a critical part of a criminal trial and in doing so it found that there is a Sixth Amendment right that counsel has to be heard in summation of the evidence at the point of view most favorable to him. And this court has followed that line of cases in Hall, Duccio and Gaines by stating that a defendant in a criminal case their counsel has a right to make all legally tenable arguments that are supported by the facts of the case. That's a right that Ms. Barksdale was denied here when in the middle of closing argument the district court reversed its previous holding and restricted defense counsel from making what was going to be a corner piece of the argument of the defense. Essentially that contrary to what the special agent stated in the case special agent Sauer the Miranda waiver form was not executed prior to her post arrest interrogation but after the fact at the same time she was signing a consent to search form at 840 p.m. And your only evidence really for that is that it did not have a timestamp whereas the later consent did. Is that correct? That's one piece that's probably the strongest piece of evidence. I didn't see any other evidence. The other inferences your honor that can be raised from the testimony at trial was special agent Sauer stating that they were in a rush to try to meet with her to do a controlled delivery. But he expressly said that they did advise and it was signed before anything else happened did he not? That was special agent Sauer's testimony that is correct yes. However the inferences were made that could suggest and and as the district court stated it was very odd that there was not an advice of rights timestamp on there's a timestamp on the cornerstone of the argument was the fact that this consent to search form which was executed and did have a 10 p.m. timestamp was not mentioned anywhere in the agent's report. The agent admitted that that was discussed during the argument on February 9th outside the presence of the jury when the issue of whether I could make this argument was was discussed by the court and the court said you can make that inference. Now the court made a 180 turn during closing argument. If prior to argument defense counsel was aware of this issue and a change in of heart that might have affected quite frankly the arguments that would have been made to the jury. But this was a critical point and a critical part of the case. I noticed that immediately after the district court ruled and his ruling was very brief it was simply I don't have it right here but sustained please disregard that statement. It was a extremely brief ruling and immediately thereafter you probably one use the lawyer at the time who was arguing for the defendant said and I'm quoting ladies and gentlemen you heard the testimony and my question on cross-examination of agent Sauer. What is in the evidence you can consider? In other words the defense counsel was not intimidated in the slightest. He went ahead and told the jury in effect that if they could remember what had happened they could consider that and neither the government nor the district court disputed that. Is that not all true? What do you it's partially true your honor but there's more. If you look right before the objection in fact the government objects it's on it at the time no your honor the statement did come in the judge said no no sustained sustained. At that point I began to try to make an argument independent of the statement just to trying to argue the timing of the Miranda form along with the consent to search form. Before I could I think made four words out the judge stopped me said sustained sustained. Right but I guess the heart of the the question is even assuming that you're right that there came in and she should not have cut off clothes the way she did. Why wasn't the error harmless in light of everything that was presented? First the judge advised the jury to disregard the statement and we presume first that the that juries follow. The thrust of my question assumes that's correct and assumes that the jury properly followed the court's instruction. So what is really the question? Why in the constellation of the facts and circumstances as they came out here would it have mattered? First of all your honor it matters on a harmless error analysis in two ways. As the court held at the rule 29 hearing this case squeaked by because of one piece of evidence and that was the evidence the testimony of special agent Sauer that Ms. Barksdale stated that of the of the that she met three people in Carousel and the one per and one of the people she mentioned was Levy. That was the judge said I think quoting her squeaked by that was the one piece of evidence that permitted the jury to even hear half of the case the conspiracy counts. So it was a critical piece of evidence and as the 11th Circuit is held in the pattern jury instructions provide the the jury is supposed to hear the nature and circumstances surrounding a post-arrest statement and consider them very carefully. So this was a critical piece of evidence toward to special agent Sauer's credibility on the statement. This is exactly very similar to this court's holding in Hall. In Hall the district court allowed in fact defense counsel to make all the factual arguments but then to try to apply those factual arguments with respect. So the significance if I understand it is not that the statement from the agent of what Barksdale told her about Levy was inadmissible but your ability to undermine and cross-examine the agent was affected by this. Well I was able to. Is that the heart of the argument though? The heart of the argument is not able to make the the argument to the jury to challenge and attack. To challenge the underlying credibility of the case agent who said Barksdale told me that she met three guys in Carousel one of whom was And then to add to that the fact that Miss Barksdale at least by the statement she made to special agent during the time of processing the statement which did come into evidence the government withdrew their objection that she asked where special agent Sauer's partner was because he said quote she said quote if if I signed the form they he said they would let me go. So it also suggests and I wasn't able to argue at closing that anything that was signed was done also under false pretenses which is also a critical argument but that's the first prejudice that this was a critical part of the case and that's what the district court said this this line of testimony. Are you going to move to the confrontation clause? Yes your honor. All right I think you better hurry. Okay well your honor with respect to the confrontation clause the statements at issue. And is it it seems to me that everything that Levy said was worth anything. The truth of anything he said was irrelevant and harmless and and the moreover it was clear that the government was not trying to get the jury to think that what he said was true but precisely the opposite. They were trying to convey to the jury that what he was saying was not true. Isn't that true? I respectively disagree your honor and let me point out to a few examples. The first being he was asked how much money do you have on you? He answered two thousand dollars. There wasn't a search of his wallet to confirm that but that was actually in the opening lines in the first page of closing argument. He had two thousand dollars on him when he was leaving Miami going to Curacao on his way back when he was searched he had no money on him. That was used for to further the drug conspiracy. That was that was the government's argument. That wasn't very convincing because the drugs were worth two hundred thousand dollars. Only when they enter the United States. Right but he wasn't gonna buy two hundred thousand dollars worth of cocaine with a down payment of two thousand dollars was he? No but the funds could have. So while it's true the statement was true rather than false it wasn't something of great moment was it? I think it's relevant considering the government made it. I agree that it's relevant. My question is it wasn't something of great moment given the amount of the dope, the fair market value of the dope and the small down payment if it was a down payment at all that he had in his pocket. I think I mean if you walked out of the country with 50 grand in cash that would have been a far more powerful piece of evidence. I'm just asking why this was a big deal in the light of the fair market value. I think it goes to maybe I think their argument was that it was a payment to the courier. That was their theory of the case. All right but let's talk about the other things that he said. Binding declaration your honors. Bear with me I'll accept that that was a true saying when he was interviewed by the one theory of the case the government's theory of the case was designed and intended to conceal the true purpose. He was asked why he was going there. He said I'm just going for a visit. He was asked again and then he said I'm going on vacation. Both statements by at least the government were false. Those weren't offered for the truth and then he was asked about his plans on reaching Kurokoro and he said I have a friend and then he was asked about the fact that they found carbon paper and he said the carbon paper was there because he was a federal FedEx warehouse employee and the in Kurokoro. All by the government's light false and all designed to conceal their theory which was the true purpose was to go there and consummate this cocaine transaction. None of that would implicate the confrontation clause would it? I see my time is up if I can. No please. I agree with the court. My only statement would be that the binding declaration that the bag that the black carbon paper was in was his his alone he packed himself the binding declaration that related. Right but the purpose of the carbon paper that he offered was by their lights a false exculpatory statement right? Yes your honor. Okay so the only thing that you have that he offered that was true embedded in this large account that they theorized was false was that he was carrying $2,000 and the second thing is he said when asked about the length of his trip was only for two or three days and that was true but why would that be a big deal when the passport itself reflected that he was only there for two or three days. Those in other words wasn't there a categorically extrinsic proof of the length of time independent of anything he said? Yes your honor. The only other issue that I would say is used for the truth of matter sort of was the binding declaration that the bag the carry-on bag that had this allegedly incriminating black carbon paper that was a big part of the government's case that it was his he packed it himself and no one gave him anything else. Well but he conceded that the carbon paper was his and he explained what it was for right and by their lights that was false. What he explained it's for but that he conceded it was his carbon paper they used for the truth. Okay thanks very much and you have reserved five minutes you'll have the full rebuttal thank you. Good morning. Good morning. May it please the court my name is Quinn Landon and I represent the United States and along with me is Joshua Rothstein he was the trial AUSA in the district court proceedings. I would first like to request that the court affirmed the verdict on all three counts and I would first like to address the confrontation clause issue. The defendant makes much about the fact that Levy made a binding declaration of the suitcase and the carry-on bag that he had however that binding declaration was of no import because there was plenty of other evidence in the record to prove that those bags belonged to him. First he had the carry-on luggage in his hand so the person who brought him knew that the luggage was his. Also when the CBP officer requested the checked luggage should be brought to him the flight attendant brought him that bag stating that it was the bag that Levy had checked prior to trying to get on the flight. So although the binding declaration was true it was of no moment because there was plenty of evidence in that the luggage and the suitcase was his. Let me ask a preliminary question on this confrontation clause issue. Were Levy's statements testimonial to begin with? No your honor. Why not? The definition of a testimonial statement is that the primary purpose of the interrogation is to establish or prove past criminal events that could later be used in a criminal prosecution. The encounter between Levy and officer Navoah was not the primary purpose of it was not in order to establish a past criminal event. In fact the purpose was to make sure that Levy was not leaving the country with any illicit materials. The CBP officer was acting under his border authority which is to The thrust of my question is that does not challenge that they had a right to question him. But it seemed to me and you can help me with this that when they confronted him and they interrogated him it seemed to me as the interrogation grew as their suspicion grew as the focal point of the inquiry became more something maybe then something that was a little bit more than a more a normally routine customs inquiry at the border whether you're going out or you're coming in. I mean they're focusing on him pretty hard and they go back and ask they don't just take his inquiry they don't say what are you going there I'm going for pleasure I'm going for a visit I'm gonna sit on the beach of Curacao. They don't stop there. They probe and they probe and they probe and they probe. Look to me that by warm lights that was designed and intended to focus on whether he had and was in the process of committing a drug transaction. If that's so why wouldn't that be testimonial and implicate confrontation? Your Honor the reason why that wouldn't be testimonial is because all of the conversation between the CBP officer and Levy did not focus on any past crime that had already been committed. As the Supreme Court stated in Davis the key inquiry is whether the statements are involving some sort of past crime or if it's forward-looking or it's addressed to an ongoing problem. How about if the crime is ongoing if there is a conspiracy to smuggle dope into the United States and it's a crime that began before the inquiry was occurring during the course of the inquiry and was designed to be consummated after the trigger testimonial comments? No Your Honor and the reason is is because that is the exact issue that occurred in Davis v. Washington. In Davis the victim in that case called law enforcement because there was an ongoing crime occurring. There was her attacker who was beating on her and she specifically stated to the 911 operator he's jumping on me again he's jumping on me again and the 911 operator asked her well who is what is the name of your attacker and she gave the 911 operator her assailant's name. The court said that the reason why those statements were not testimonial was because the primary purpose of that conversation was not to establish events for criminal prosecution but to stop or to stem an ongoing crime. I accept that in Davis but why wouldn't one reasonably conclude that as this dialogue this interrogation went on it changed and it turned and it turned into something that really was focusing on whether he was committing a crime? Well Your Honor in this sense this is going to be an objective inquiry that's what the testimonial inquiry is and the inquiry is whether a reasonable person in Levy's shoes would think that when they're answering the customs officer's questions about the items that are in his luggage or the reason why he's going to Curacao that those questions would somehow be used later on at trial and no reasonable person when they go through customs would think that answering those questions even if they turned a little bit more focused on Levy's intent. I guess that's really my reasonable person conclude by the end of that dialogue that she was zeroing in on him for the possibility that he was committing a drug crime. Because these questions which were simply what is the purpose of your trip you know why are you going there why are you going to visit are you going for business are you going by yourself what kind of activities are you going to do those are routine questions that are asked of many passengers that fly through the Miami International Airport on a daily basis and so that would mean that these sorts of questions whenever they are asked a person who is answering them always has a thought in their mind if I answer these statements one day they're going to be used against me at trial. It is completely known to everyone who goes through customs that these sorts of questions will be asked of them and the primary purpose of those questions is not to establish a crime but to make sure that there are no illicit materials that will be exiting the country or entering the country. Assume for the purposes of my question that the inquiry and what was elicited was testimonial in nature and let's go to the second question. Were there any things that he said that were offered for the as a whole to prove that he prevaricated and lied in order to get out of the United States to make it to Curacao so that he can deliver a suitcase and the carbon paper so that Ms. Barksdale could return to the United States with that same suitcase with carbon paper wrapped around 2.1 kilograms worth of cocaine. There are one or two statements that could have been true but there was other evidence that could support those statements. For instance, it is incorrect what the defendant stated that the government argued that the $2,000 was a payment to the courier. The government may never made that argument anywhere in evidence. Did the officers see the $2,000 or what did he merely say he had that? That is unclear from the record. However, that $2,000 payment was of no import to the case. No, no, but that's not the thrust of the question. The question is when you offered the statement through the agent of what Levy said, the agent testified that Levy said that he had $2,000 in cash on him. There was no indication that that was false and you weren't offering that statement to suggest that it was false, right? We were offering Levy's statements as a whole. I understand that taken as a whole, your theory is it was designed to conceal the true purpose of the trip but embedded within that were statements that he also made which were true. Yes, Your Honor. Isn't that right? And among them were that he was going for only a trip of two or three days and that the luggage belonged to him. Yes, those statements are true. However, they are not testimonial. But I said I wanted you to assume for the purposes of my question that we didn't agree about that and we concluded that the interrogation turned into something that was not testimonial as it unfolded. In the course of the false exculpatory narration that he gave, you offered statements from him that you concede were true, right? Yes. So how do we handle those truthful statements when embedded in a false account of the purpose of the trip? Admittedly, the false exculpatory account would not implicate the confrontation clause because they weren't offered for the truth. But to the extent that embedded in that false account, there were three things that he said that were true. That would implicate the confrontation clause assuming we get beyond the question of whether it's testimonial. How do we handle that? Your Honor, it is the government's position that the court could consider those statements to be harmless for several reasons. The $2,000 that Levy had on his person was of no import to the government's case. It was never mentioned during closing and contrary to what the defendant has stated, the government never argued that that $2,000 payment was used to pay the courier. Secondly, the fact that he stated that he was going to because that is proven by A, his travel records and also for the fact that we know that he got on the airplane to go to Curacao. Let me ask you a fact question about that. I take it the record will reflect that the length of his trip was extrinsically established either through a passport or his tickets? Yes. Okay. And also there is testimony from two officers, the first officer that was leaving the country on July 10th, and then the second officer who spoke to him when he came back was on July 12th. There's evidence in the record that the vacation was only two days. What about the friend? That seems to me to be another statement that was true because he did meet this defendant there. That could have had some probative value unlike most of the other things that might have been true. Well, Your Honor, in regards to that particular statement, it is the government's position that once again, Levy was prevaricating when he made those statements because at first he stated he was going to Curacao to be alone and he was going on vacation by himself and then he turned around and said that he was going to vacation to meet some friend. But when the officer asked him what his friend's name was, he couldn't remember or he gave some name. And the officer related to the jury that he did not believe that that statement was true and that that was some sort of a cover-up to conceal the true purpose of his trip. So your position was the statement about meeting a friend was false, not true, at least by your theory of the case. It is the crucial fact that the government's purpose in offering it was not to prove the truth but rather to prove that it was not true, that he was prevaricating. Is that the real crux of it? Yes, Your Honor. And if that's true, it's pretty clear that that's what the somebody's taking a long time to give you an answer or if they don't know the details, like the person's last name, it usually means they're being deceptive. Yes, Your Honor. So it is pretty clear here with respect to the friend that the government's purpose in offering it was not the truth of it. Yes, Your Honor. And that is precisely why Levy's statements does not implicate the... So your position is it doesn't matter that embedded within a false exculpatory account by your lights of it, there was some shards of truth offered because the whole thrust of the statement was offered to show that he was intending to conceal. Yes, Your Honor. Let me ask you one question about the closing argument. Counsel, your opponent is maintaining that the statement that was excluded by the judge's ruling was the statement about the Miranda ruling, having the Miranda questions and form having been signed first off. I thought in reading the record there, that portion of the record, that the statement that was most directly excluded and only this statement was not the statement about Miranda at all, but rather the statement, quote, where's the jury, where's the guy with the tattoos, question mark. He promised me that if I signed the form, they would let me go. Is that not the question that was stricken? Your Honor, I see that my time has run out. May I answer your question and then briefly conclude? You may. Your Honor, the statement, where's the guy with the tattoos, he promised me that if I signed the form, I could leave tonight. The first part of that statement... I understand that, but is that not, my question is, is that not the statement that might have been construed by the jury to be Yes, Your Honor, but it's the government's position that once the defendant made that statement, she began to mischaracterize what the form was that she referred to in that statement, if I signed the form, I would be able to go home tonight. And so it was that mischaracterization that the government objected to, and the district court rightly sustained that objection, albeit for the wrong reason. And if there are no further questions, the government rests on its brief. Thanks very much. Government asks that you affirm. Thank you. Mr. Schwartz, you've reserved five minutes. Thank you. Starting first with where the issue of closing argument. The reading of the transcript was not limited merely to the statement, the guy with the tattoos, he, where was he, if he, he said if I signed the form, he would let me go. It was related to the entire argument because it was all part of one argument, quite frankly. It was... I think that's entirely speculative. The most proximate phrase when the objection came was the one I just read about where's the guy with the tattoo, the one that told me if I signed the consent form, I could go home. Well, Your Honor... Is that not the most proximate statement to the objection? Yes or no? Of course it's the most proximate, absolutely. I don't, I don't deny that, Your Honor, but... Is that not the most likely statement that the jury would construe to be excluded? I disagree with that assessment, Your Honor, because the argument that was being made related to the forms being signed and when they were being signed. And when defense counsel began to try to at least argue the Miranda statement, he was then cut off by the court again where the judge at that point said disregard the statement. And defense counsel made no further commentary with respect to that issue. And why this is important, not only because it was, went to a critical part of the case, but it also infected the credibility of defense counsel, which then the government, as we stated in our briefs, exacerbated that prejudice in rebuttal clause by arguing the credibility of defense counsel as opposed to the facts of the case. And here, Your Honor, it was critical because, while I think we cannot, this wouldn't survive under a harmless error standard, because in the previous trial, as was stated in the February 9th hearing, the part of this argument was presented to the jury and the jury hung. The statement of Ms. Barksdale did not come in at the first trial, but the argument about the timing of the Miranda forms was argued in the first trial and the jury could not reach a unanimous verdict. But this is a structural error in our view because as this court held in Roy, there's a line of Sixth Amendment cases that when there's government intrusion or interference with a critical part of the case, which is what happened here, that doesn't fall under the harmless error standard. That's a chronic error. And based upon the rule, this court's ruling in Roy and Hall, we believe that that is structural error for it to be reversed. Turning to the testimonial nature of the statements at hand, the statements here were not like a 911 call in Davis or in Bryant where an individual was shot and police were trying to figure out if there was a public emergency, if there was a public safety issue immediately going on. In fact, in Bryant, Judge Sotomayor makes clear that the zero-sum, it has to be about a past act, not a concurrent act, dichotomy that the government suggests is not the right analysis or framework. Right, but we're talking about a someone at the border leaving the country or someone at the border coming into the country. The customs and immigration officials will normally ask sort of basic pedigree questions. You're not suggesting that that inquiry, standing alone, amounts to testimonial commentary, are you? I think, Your Honor, it actually may, based on... Well, it can mature into that, but you're not suggesting that, for example, if you're coming back from a trip to Curaçao and you're there with your wife and you've got two bags and you've been well tanned sitting on the beach and the customs agent says to you, where you been? And you say, I stayed at the ex-hotel, we were there four days for a vacation. Are you bringing anything in, he says. Yeah, I would not be testimonial in nature, would it? It may, because they are formalized questions. Okay, so either it is or it isn't. I'm giving you the hypothetical. My answer would be... At the border, by that right, every question asked by every border official of anybody entering or leaving the United States would be testimonial in nature. That can't be right, it seems to me. No, Your Honor, but... Something more has to happen, and I'm trying to get you to turn a normal, routine, rote inquiry into something that becomes testimonial. So I think, Your Honor, it's the initial questions then spur follow-up questions because there's something there that the agents feel they need to inquire further, and that's where it turns into an interrogation, and that's where the questions are formalized and not informal like was the case in Bryant, and it was one of the critical issues that judge... Okay, so your position has to be that this inquiry, which may have started out as a purely rote inquiry, matured into something else. Yes, Your Honor. And it's at that point that Levy's commentary became testimonial. Yes, Your Honor. Okay, let me ask just one follow-up question to you again. Where the statements were designed in the whole and were offered for the purpose of showing that the declarant was offering a false account for his visit to Curacao, why should it matter for Confrontation Clause purposes that one or two comments embedded within this false account happen to be true? Because the government used different parts of the statements in different ways. I don't think we can just cut and say they were only used for the falsity. Parts of his statements were used for the truth of the matter asserted, the binding declaration, the $2,000. She said that $2,000 was not used, and what you quoted did not indicate to me that the $2,000 was used to indicate that he paid the Curacao or anybody else. I don't think they argued that. They argued that there was $2,000 when he left and not when it came back, and that was in the beginning of the closing argument. So it was a relevant argument for the government to make. I see my time is up. You take your time in answering. And the same thing with the friend, the only other one I worried about. That was not mentioned in the closing argument. I don't believe it was mentioned in the closing argument, Your Honor. Thank you very much. Thank you. Thank you both for your efforts. I note, Mr. Schmortz, that you and your firm took this case on as a court-appointed case. We very much appreciate you taking on the effort and vigorously representing your client. We appreciate the efforts of the United States, and we will move on to the next case, which